IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DEBORAH EPPERSON | § | |
| | § | |
| V. | § | CASE NO. 4:10–CV-00540 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER OF**
**<u>UNITED STATES MAGISTRATE JUDGE</u>**

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits ("DIB"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be Affirmed.

**HISTORY OF THE CASE**

Plaintiff protectively filed an application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act on May 14, 2003, claiming entitlement to disability benefits due anxiety, depression, bipolar disorder, coronary artery disease, history of hepatitis-C, low back pain, chronic pulmonary disease, diabetes, and seizure disorders. Plaintiff's application was denied initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) in Dallas, Texas on May 4, 2006. Plaintiff was represented by counsel at the proceeding. At the hearing, Plaintiff, the ALJ's medical experts, Alvin Smith, Ph.D., and Sterling Moore, M.D., and the ALJ's vocational expert, Suzette Skinner, testified.

1

On July 21, 2006, the ALJ denied Plaintiff's claim, finding Plaintiff "not disabled." Plaintiff requested Appeals Council review, which the Appeals Council granted on November 16, 2007, vacated the ALJ's decision, and remanded the case for further consideration of the treating source opinions, the plaintiff's maximum residual functional capacity, and "if warranted by the expanded record, to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimants occupational base." Further, the plaintiff filed an additional claim for Title XVI benefits on September 5, 2006, and the Appeals council noted that the subsequent claim was rendered duplicate and should be associated with the original claim.

A remand hearing was held in Dallas, Texas on December 4, 2008. Plaintiff was represented by counsel at the hearing. Plaintiff and her daughter, Angela Gomez, testified. On March 16, 2009, the ALJ again denied the Plaintiff's claim. Plaintiff's request for review was denied by the Appeals Council on August 20, 2012. Therefore, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2005).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since May 14, 2003, the application date of her earlier claim. 20 C.F.R. § 416.971 *et seq*.

2. The claimant has the following severe impairments: coronary artery disease, history of hepatitis-C, low back pain, depression, anxiety, and mathematics disorder. 20 C.F.R. § 416.921 *et seq*.

2

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.925 and 416.926).

4. The claimant has the residual functional capacity to lift and carry up to twenty pounds not more than two hours in an eight-hour workday, i.e., occasionally, and up to ten pounds not more than six hours in an eight-hour workday, i.e., frequently, and to sit, stand, and/or walk frequently with a sit-stand option at one hour intervals and perform postural work, not more than incidental contact with the public, and no constant dealing with people or co-workers.

5. The claimant is unable to perform any past relevant work. 20 C.F.R. § 416.965.

6. The claimant was born on March 17, 1958 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed. She is currently a younger individual under the age of 50. 20 C.F.R. § 416.963.

7. The claimant has a limited education and is able to communicate in English. 20 C.F.R. § 416.964.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

9. Considering the claimant's residual functional capacity, age, education, and work experience, there are jobs that exist in significant numbers in the national economy that the claimant can perform. 20 C.F.R. §§ 416.969 and 416.969a.

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 14, 2003, the date her earlier application was filed. 20 C.F.R. § 416.920(g).

(TR 23-33).

**STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision of no disability is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401. The Court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court is not to substitute its judgment for that of the Commissioner, and reversal is permitted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below.

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987).

At the fifth step, it must be determined whether claimant could perform some work in the national economy. A claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

At this juncture, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which Plaintiff can perform, consistent with his medically determinable impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). Once the Commissioner finds that jobs in the national economy are available to the claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v.*

*Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

In this case, a determination was made at the fifth step.

## ANALYSIS

Plaintiff's first point of error is that the ALJ used the wrong standard at step two in assessing her impairments. In finding that Plaintiff had six severe impairments, the ALJ noted that an impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. The standard in this Circuit is that set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) which states that "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1011. It is clear that the ALJ did not refer to the *Stone*.

If the Court determines that a rote recitation to *Stone* is required in every decision, then the case must be remanded. However, even the Fifth Circuit has held that when the ALJ's analysis goes beyond step two, as here, specific reference to *Stone* and its requirements is not necessarily required. *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988). Added to this mix is the recognized proposition that procedural perfection is not required unless it affects the substantial rights of a party. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Plaintiff's main complaint is that the ALJ failed to find that she had a medically determinable impairment of COPD. A claimant bears the burden to prove existence of impairment(s) which "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment

6

must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508 (2004). Once the claimant proves such impairment, the Commissioner must determine whether it is severe. 20 C.F.R. §§ 404.1520(a)(ii), (c) (2004).

Numerous records indicate that, from the first hearing to the second hearing, there were references to Plaintiff 's COPD (TR 980-82; 1002-03; 1638; 1640;1659-60). The treatment records from Red River Regional Hospital reveal that she is taking Combivent. However, there were multiple references to COPD prior to the first hearing. Consistent throughout the period are x-rays demonstrating no pulmonary edema or acute cardiopulmonary disease (TR 1333; 1613). Records from this same period indicate that she has a history of noncompliannce with medications and follow-up. Also noted throughout the records and commented on by the ALJ is that she continued to smoke, even with her claimed medical condition.

Under the Regulations, a claimant must follow the treatment prescribed by his or her physician if the treatment can restore the claimant's ability to work. 20 C.F.R. § 404.1530. If a claimant fails to follow prescribed treatment without good reason, the claimant will not be entitled to disability. *Id.*; *see also Johnson v. Sullivan,* 894 F.2d 683, 685 n. 4 (5th Cir. 1990) ("Even if [Plaintiff] were found to be disabled ... he would still not be entitled to recover benefits inasmuch as he failed to follow the treatment regimen prescribed by his physicians."). It is also within the ALJ's discretion to discount a claimant's subjective complaints based on his decision to not follow physicians' recommendations. *Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991). Thus, even if Plaintiff's "disregard of medical advice may not meet all of the requirements to warrant a finding

of not disabled under 20 C.F.R. § 404.1530"— *i.e.,* that quitting smoking would have restored Plaintiff's ability to work — "it may be an indication ... that ... [Plaintiff's] symptoms were not that severe because they did not cause him to cease smoking." *Tolliver ex rel. Tolliver v. Astrue,* 2012 WL 566906, *6 n. 8 (W.D.La. Jan. 23, 2012) (noting that the claimant "inexplicably continued to smoke one and one-half packs of cigarettes per day, despite having been warned by his doctor to cease smoking some four years earlier."). Even more astonishing, the records reveal that, while Plaintiff was being treated for her heart condition and using oxygen, she went out of her room for a smoke.

On October 16, 2007, a chest x-ray noted mild underlying COPD (TR 1507). Yet, at a different hospital one day earlier, the study for lung disease was negative (TR 1613). Other chest x-rays, as noted, have been normal (TR 1494). Examination of the lungs was unremarkable (TR 1474, 1478, 1486, 1491). Therefore, the Court finds that the ALJ's finding that COPD was not a medically determined impairment is supported by substantial evidence. Since it was not a medically determined impairment, the ALJ's failure to apply *Stone*, if error at all, is irrelevant.

The next point of error is that the ALJ failed to adequately consider the effect of Plaintiff's mental impairments on her physical symptoms when making his credibility and RFC findings. The ALJ specifically referenced her mental impairments and noted that he was required to consider her mental profile in arriving at her ultimate RFC. For example, as to Plaintiff's back pain, the ALJ noted that the x-rays revealed some evidence of degenerative spine disease but SLR negative at 80-85 degrees. Squatting was 70% of normal (TR 25). At the first hearing, Dr. Moore testified that her back x-rays showed only mild degenerative changes (TR 26). Her chest pain was noted as atypical

(TR 26). The ALJ found that her artery re-stenting was successful (TR 26). The ALJ specifically found that Plaintiff's medical records showed no specific causes for her generalized complaints (TR 26).

The ALJ is entitled to determine credibility and weigh testimony. *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994). The ALJ's credibility determination is entitled to great deference. *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000). The ALJ set forth several facts underlying the determination that Plaintiff's credibility was limited, including citations to medical record evidence. The ALJ specifically stated that he was to consider her mental profile in arriving at a RFC. He discusses her mental status and evaluations at length. In making his RFC findings, the ALJ states that he has considered all symptoms and the extent to which these symptoms can reasonably be accepted consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. 416.929. The C.F.R. specifically references how the ALJ is to consider the effect of pain in relation to a physical or **mental** impairment. *See id.* The ALJ complied in this regard, and the decision supports the fact that he fully considered Plaintiff's mental impairments. He noted that her mental profile was essentially unchanged from his first decision in the matter.

Plaintiff cites the Court to *Latham v. Shalala* , 36 F.3d 482 (5th Cir. 1994) in support of her position that the ALJ did not consider the effect of her mental impairments on her physical symptoms. In *Latham*, however, the claimant was diagnosed as having mental problems and a somatoform disorder characterized by physical symptoms that cannot be explained by objective medical evidence. No such diagnosis confronted the ALJ here. The ALJ discussed and commented on the recognized mental and emotional barriers confronting plaintiff and incorporated these

9

limitations into his RFC. Plaintiff's second point of error is overruled.

Plaintiff's third point of error is that the ALJ's reliance on medical testimony from the prior hearing does not provide substantial support for his findings. Plaintiff contends that, because her medical condition deteriorated over three years, the ALJ's decision is flawed. She says she continued to experience chest pains after her surgery, and the doctor did not have access to this information. She also points out that subsequent records point to the fact that there is a reasonable probability that the expert would have agreed in her COPD diagnosis. She also claims that subsequent mental exams paint her in a different light than that found by Dr. Smith.

The ALJ stated that he accepted the prior limitations given to Plaintiff. The ALJ gave his reasons for so holding. For example, the records of the Red River Hospital in 2009 note that Plaintiff had a normal ultra sound of her lower extremity (TR 1739). A CT scan of the head was normal (TR 1747). Her physical exam reveals no acute distress and no motor/sensory deficits (TR 1754). Her chest x-ray was normal (TR 1760).

Some three years earlier when treated at Northeast Medical Center, her EKG was essentially normal as well as her cardiac enzymes (TR 1830). Her heart echo study was noted as a Grossly Normal Resting Echocardiogram with an ejection fraction of 60% (TR 1834). Her chest x-rays were unremarkable (TR 1839). No acute findings were noted on the C-spine x-ray (TR 1840). No stenosis was noted in the carotid arteries (TR 1841). Her sodium, potassium and chloride lab results were normal. Her cholesterol was normal but her Triglycerides and HDL were abnormal. Later chest studies were unremarkable (TR 1876).

In July 2007, plaintiff refused Ultram because she wanted "narcotics" (TR 1041). At the

10

hospital, she demanded pain medication even though there was no indication she had any pain. She refused a prescription for Tylenol and Ultram. And, after complaining to the nurses and refusing her prescriptions, she left in no distress – or so says the nurse (TR 1042). The records in the ER note that, on July 13, 2007, she complained of pain all over (TR2100). Later notes indicate that she was in a wheel chair at the back door smoking and in no distress (TR 2204, 1062).

In March 2007, no acute cardiopulmonary process was seen (TR 1127). Perhaps the last entry the Court will comment on from the multitude of those available follows: **"All work up has been negative for cardiac but pt. continues to claim unbearable pain except when she is on the phone or walking down to smoke"** (TR 1148) (emphasis added). Plaintiff's third point of error is overruled.

Plaintiff's last point of error is that the ALJ improperly considered treating and examining medical opinions. Plaintiff points out that the first Appeals Council remanded the case back to the ALJ to clarify inconsistencies in a Dr. Arozola's reports. The ALJ did not do so, nor did Plaintiff. According to counsel, he was under the impression that Dr. Arozola had retired and could not be found (TR 1710). It is not clear what steps anyone took to find Arozola. A review of the Texas Medical Board's website lists a doctor of the same name living in the Henderson area. Nonetheless, this time the Appeals Council was not persuaded to remand the case back for this reason. Nor is the Court.

The ALJ discussed at length both of Dr. Arozola's reports, commenting on the fact that at least in one report her pain was not expected to last longer than six months. The ALJ then gave his reasons for assigning what weight he found to the doctor's opinions. As to her anxiety, the ALJ

11

found that it was a severe impairment and took it into consideration in his RFC. Dr. Rattan diagnosed her with depression but noted her prognosis was fair if she complied with treatment. The ALJ found that she had a severe impairment as to depression. A person's GAF score does not necessarily relate to their ability to work. *See Davis v. Astrue*, 2008 WL 517238 (N.D. 2008). The ALJ commented on Dr. Alexander's findings noting that he found no mental abilities limited to a marked or extreme degree (TR 29).

As for Dr. Lee's examination, he noted that when he evaluated the patient she became very vague and evasive in her answers. He also noted she had been reported to be somewhat of a med seeker frequently requesting narcotics (TR 1489). The discharge notes from that same hospital stay indicate that she was finally not deemed to be suicidal or homicidal. She was stable and denying any symptoms that would indicate angina (TR 1491). Plaintiff's fourth point of error is overruled.

All in all, there is more than substantial evidence to support the ALJ's thoughtful, thorough and patient decision.

Pursuant to the foregoing, the decision of the Administrative Law Judge is **AFFIRMED.**

**SO ORDERED.**

SIGNED this 22nd day of March, 2013.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

12